IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAREN L., | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-CV-1848-SMY |
| | ) |
| KILOLO KIJAKAZI, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|         Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Karen L.[1] seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB on November 14, 2017[2], alleging a disability onset date of January 1, 2016 (Tr. 126). Her claim was initially denied on December 21, 2017 (Tr. 79-80), denied again on April 6, 2018 (Tr. 81-89), and finally denied by an ALJ in a decision dated July 1, 2019 (Tr. 7-23). On July 25, 2019, Plaintiff submitted a timely request for review by the agency's Appeals Council (Tr. 122-125), but they denied the request on April 23, 2020 (Tr. 1).

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and its Advisory Committee Notes.
[2] Other documents sometimes refer to this date as October 26, 2017, such as the Disability Determination and Transmittal (Tr. 79).

Plaintiff filed a Complaint in federal court and this Court issued an order reversing and remanding the case for rehearing and reconsideration of the evidence (Tr. 743-760). Following rehearing, the ALJ issued an unfavorable decision dated June 22, 2022 (Tr. 652-679). The record does not include a request for review of that unfavorable decision with the Appeals Counsel (Doc. 10-1), but Plaintiff asserts she did so, and the Court finds this assertion credible (Doc. 1, p. 1). Pursuant to 20 CFR § 404.984, the June 2022 decision of the ALJ became the final decision of the agency, and Plaintiff filed the instant lawsuit.

## Issues Raised by Plaintiff

Plaintiff raises the following issue for judicial review:

1. The ALJ erred in evaluating Listing 8.06, Hidradenitis Suppurativa (skin lesions);
2. The ALJ erred in evaluating credibility of Plaintiff's statements and some of her treatment.

## Legal Standard

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her

former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled.  A negative answer at any step, other than at step 3, precludes a finding of disability.  The claimant bears the burden of proof at steps 1–4.  Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).  Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**Decision of the ALJ**

On remand, the ALJ reconducted an analysis of whether Plaintiff was disabled and followed the five-step analytical framework with respect to Plaintiff's application.  He determined that Plaintiff had not worked at the level of substantial gainful activity from the

alleged onset date of December 18, 2015 through the date last insured of December 31, 2016 (Tr. 658). He found that Plaintiff had the severe impairments of chronic obstructive pulmonary disease, hidradenitis suppurativa, diabetes mellitus, and obesity (Tr. 659) but concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. Part 404 (Tr. 661).

With respect to Listing 8.06 (hidradenitis suppurativa) that requires "extensive skin lesions" that have "persisted for at least three months," the ALJ noted, "Here, while the claimant's dermatologist indeed treated lesions within the claimant's bilateral axillae over the course of three months (Exhibit 13F/15-17), the record does not support a finding that the claimant's hidradenitis suppurativa lesions resulted in a very serious limitations within the relevant period covered by this decision" (Tr. 661-662). While this initial discussion was brief, the ALJ discussed the hidradenitis issue in conjunction with Plaintiff's testimony (Tr. 663-664), skin treatment records throughout 2016 (Tr. 665), and the findings/observations of Dr. Murugappan and Dr. Musick (Tr. 667-668).

The ALJ concluded as follows regarding Plaintiff's Residual Functional Capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she was able to lift, carry, push, and/or pull up to 10 pounds occasionally and less than 10 pounds frequently. She could stand and/or walk about two hours in an eight-hour workday and sit about six hours in an eight-hour workday. She was unable to climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs. The claimant could occasionally stoop, kneel, crouch, and crawl. She should have had no exposure to temperature extremes. She was able to tolerate moderate exposure to pulmonary irritants, dusts, fumes, gases, odors, and poor ventilation. In formulating this conclusion, I considered the prior Administrative Law Judge's residual functional capacity at Exhibit 8A, and I reduced it further

> given the evidence as a whole, and Exhibit 7F in particular, the combination of which supports the above work-related limitations.

(Tr. 662-663)

The ALJ ultimately concluded that Plaintiff was not disabled based on her ability to perform her past relevant work as an insurance agent or collector, which did not "require the performance of work-related activities precluded by the claimant's residual functional capacity" (Tr. 669). The ALJ also consulted the vocational expert who determined that Plaintiff could perform her past work as an insurance agent within the "sedentary exertional level, as actually performed" (Tr. 671).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

## Agency Forms

Plaintiff was born in 1962 and was 53 years old on the initial alleged onset date of January 1, 2016 (Tr. 126, 147). She worked as an insurance owner from 2002 to 2015 and as a collector from 2003 to 2004 (Tr. 152). She initially filed for disability based on "copd, neuropathy in feet, lower back, [and] diabetic" (Tr. 151). Plaintiff later added the condition hidradenitis suppurativa, that originated in "November/December 2017" after treatment with dermatologist Dr. Musick (Tr. 82, 183). She stated, "I have a condition called hidradenitis suppurativa that is under both armpits and in the left groin area. This is a very painful disease and embarrassing as well. This disease causes trials of boils wherever it occurs. They are very painful and they swell large in size and drain" (Tr. 82).

**Evidentiary Hearings**

Plaintiff was represented by counsel at her first hearing on June 12, 2019 (Tr. 24) and testified to the following: She suffers from COPD that makes her breathing tough and she has a bulging disc in her back that makes walking or bending difficult (Tr. 35-36). She last worked in 2015 as an insurance agent for worker's compensation carriers and has had her license since 2011 (Tr. 36-37). The ALJ questioned Plaintiff about her skin condition, hidradenitis, which she stated is "not curable with anything" and results in constant pours of pus and blood (Tr. 51-52). It started around 2015 and results in immense sores that cause pain and foul smells (Tr. 57). Plaintiff has been treating this condition with Dr. Musick, and Plaintiff's attorney interjected that "[her] strongest point is possibly meeting or equaling [Listing] 8.06" (Tr. 52). Despite medications and treatments, she has had the condition for over three months (Tr. 54).

Following Plaintiff's testimony, Darrell Taylor, a vocational expert, ("VE") testified. The ALJ questioned the VE about whether with a light RFC, Plaintiff could still perform any jobs in accordance with the Dictionary of Occupational Titles ("DOT"). The VE responded that Plaintiff could work as a packer, production worker, or light unskilled cleaner (Tr. 64).

Plaintiff was once again represented by counsel at her hearing on remand on June 2, 2022 (Tr. 682). Prior to the start of the hearing, the ALJ noted that the case had been remanded because there was insufficient detail about the "diabetic neuropathy and the hidradenitis as well" (Tr. 684). The ALJ confirmed that Plaintiff had filed for disability benefits in 2017 based on chronic obstructive pulmonary disease, neuropathy, and diabetes, but that her skin condition had been brought out through the course of the medical records (Tr. 689).

Plaintiff's counsel asserted that Plaintiff meets Listing 8.06 due to her treatment with Dr. Musick, whose records establish that the condition was severe enough to meet the listing

(Tr. 690). Plaintiff testified that her hidradenitis caused large boils under her armpits that filled with pus and blood, after which they would fill for days before busting with a constant drainage of blood and pus that "smells horrifying" (Tr. 693). Aside from these flares, she has "skin lesions" that never heal (Tr. 694). Plaintiff saw Dr. Musick and received medication to treat her condition, but it only worsened (Tr. 693). The hidradenitis spreads to any areas that "might get more sweaty with movement" and causes pain (Tr. 700-701).

The ALJ questioned a VE, Jacqueline Crawford-Apperson (Tr. 703). She testified that in her opinion, Plaintiff could perform her past work as an insurance agent or collector as "actually performed" (Tr. 706). But the VE admitted that if Plaintiff had to regularly miss a minimum of two days per month, that it would eliminate both jobs (Tr. 707).

**Relevant Medical Records**

On December 18, 2015, Plaintiff's saw primary doctor, John Cumberledge, M.D., in order to discuss an appointment with a dermatologist to prevent her Hidradenitis (Tr. 311). There is limited correspondence between Dr. Cumberledge and Dr. Musick in the record, including a letter acknowledging Plaintiff's treatment on April 6, 2016 (Tr. 445).

On March 7, 2016, dermatologist Dr. Musick first saw Plaintiff for a consultation and diagnosed her with "Hidradenitis – axillae" with a proposed treatment of spironolactone and laser hair removal (Tr. 445).

On March 14, 2016, Plaintiff called Dr. Musick's office to describe a flare of Hidradenitis and to ask if spironolactone was safe for her to take as a smoker (Tr. 420). She noted that the medication Septra had been "very effective in the past" (Tr. 420).

On June 7, 2016, Plaintiff's progress notes indicate that she complained that her Hidradenitis is "really bad right now" and "uncomfortable" and she wanted to see if there was further medication that she could take (Tr. 420).

On June 17, 2016, Plaintiff's primary doctor, John Cumberledge, M.D., acknowledged her Hidradenitis and referred her again to Dr. Musick for treatment (Tr. 310).

On June 30, 2016, Plaintiff underwent GentleLASE treatment on her armpits (Tr. 442). The medical records from Dr. Musick around that time indicate that she had Hidradenitis on both axillae (Tr. 414-415).

On August 3, 2016, Plaintiff returned to Dr. Musick's office for a refill of medication and to discuss how her condition has become "more inflamed and painful" (Tr. 419). Plaintiff returned on September 9, 2016 and October 25, 2016 with similar complaints (Tr. 419).

On December 5, 2016, Dr. Musick's progress notes indicate that Plaintiff's Hidradenitis had cleared up after she used a new medication. A Z-pak helped her clear it up (Tr. 418).

On May 31, 2017, Plaintiff saw Dr. Musick and indicated that her right axillae had issues but that she was still thinking about taking Humira (Tr. 412).

On March 2, 2018, Plaintiff visited Nurse Practitioner Amanda Kilzer for "multiple boils under her breasts" and noted that "she has had them before and has been treated for Hidradenitis in the past" (Tr. 1423). A subsequent exam showed "4 abscesses on the chest" with an assessment of "breast wound" (Tr. 1427-1428).

On May 16, 2018, Plaintiff visited Nurse Practitioner Amanda Kilzer again and noted that, "she still has some healing abscesses on her breast bilaterally. She reports that they open and drain on their own. She reports that wounds are much better than they were last week" (Tr. 1405).

On May 23, 2018, Plaintiff saw Dr. Musick and commented that her Hidradenitis had spread to the crease of both of her legs (Tr. 409).

On August 6, 2018, Plaintiff saw Dr. Musick and commentated that her right axillae "always agitated" because of her Hidradenitis but that it "looks better now" (Tr. 408).

On October 24, 2018, Plaintiff visited Nurse Practitioner Amanda Kilzer and complained of "chronic skin issues." The records note that Dr. Musick wanted to prescribe Plaintiff with Humira but Plaintiff's pulmonologist did not agree with this course of treatment because of the risk of infection (Tr. 1392).

On March 27, 2019, Plaintiff visited Nurse Practitioner Amanda Kilzer and did not complain of any issues with her skin. The record indicates that her skin is "warm, dry and intact. No rash noted" (Tr. 1333).

On June 4, 2019, Plaintiff went to GCC Gateway Medical Group for her diabetes and reported, "no dry skin, no thin skin, no bruising tendency, no acne . . . and no recurrent infections or slow healing wounds" (Tr. 1511).

On March 15, 2021, Plaintiff was admitted to the St. Elizabeth's Hospital and the records note that her Hidradenitis is being treated with spironolactone (Tr. 1106, 1108).

On October 28, 2021, Plaintiff visited Nurse Practitioner Amanda Kilzer and reported that, "She is having flares of her hidradenitis in her breast folds and groin" (Tr. 1160). N.P. Kilzer advised her to follow up with her dermatologist.

On November 12, 2021, Dr. Musick wrote a note in Plaintiff's file that she is under his care for treatment of severe hidradenitis; he has tried multiple oral and topical medications without success (Tr. 909). The last remaining treatment is Humira (Tr. 909). There are

progress notes in Dr. Musick's file from 2019 to 2022, indicating treatment of her hidradenitis (Tr. 899-908). The lesions appear in various places in her body, including the axillae (Tr. 902).

### State Agency Consultants' Opinions

On June 27, 2018, Dr. Musick completed a treating physician data sheet for Plaintiff (Tr. 363, 367). He noted that she has had this condition since 2015, with functional loss in the chest, axillae, and the perineal/inguinal region (Tr. 363-365). The disease is only "partially" responsive to treatment but with no complications (Tr. 365).

### Discussion

Plaintiff contends that she is disabled because of her skin condition, hidradenitis suppurativa, and that the ALJ failed to consider her subjective symptoms.

### ALJ's Analysis of Listing 8.06

A claimant is presumptively disabled if her impairment or combination of impairments meets or equals a listing, such as Listing 8.06. See, *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). If so, then the claimant's impairments may be "'severe enough' to be presumptively disabling—that is, so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary." *Jeske v. Saul,* 955 F.3d 583, 588 (7th Cir. 2020), citing 20 C.F.R. § 404.1525(a).

Plaintiff asserts that the ALJ did not sufficiently articulate why her hidradenitis suppurativa failed to meet the criteria of Listing 8.06, for which claimants must demonstrate "extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 8.06. "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R., Pt. 404, Subpt. P, App. 1 §

8.00(C)(1). As the ALJ noted in his decision, the listing provides non-exhaustive examples of skin lesions that result in serious limitation: (a) "skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity"; (b) "skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements"; and (c) "skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate" (Tr. 661). *Id.*

Plaintiff has the burden of showing that her impairments satisfy all the various criteria specified in the listing. *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999). The ALJ should mention the specific listings they are considering, and a failure to do so, if combined with a "perfunctory analysis," may require a remand. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). Remand based on a perfunctory listing analysis is proper when the ALJ only provided several sentences in support of their finding while failing to acknowledge several aspects of the record that could meet or equal the listing. *Minnick v. Colvin,* 775 F.3d 929, 935-36 (7th Cir. 2015) (remand proper where ALJ merely repeated the language of listing and indicated that plaintiff did not meet it while failing to fully discuss the record). See also, *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006) (remand proper where ALJ failed to discuss evidence favorable to the claimant).

Considering the ALJ's discussion of Plaintiff's skin condition and review of the underlying medical treatment, this Court does not find the ALJ's analysis to be perfunctory. *Id.* The ALJ acknowledged that Plaintiff's dermatologist "indeed treated lesions within the claimant's bilateral axillae over the course of the three months," yet found that the record did not support that this condition resulted in very serious limitations (Tr. 661-662). While the

ALJ's initial discussion of the listing is brief, the ALJ discussed Plaintiff's condition in greater detail throughout his opinion.

The ALJ reiterated Plaintiff's testimony about the large boils under her arms that popped and her difficulty with moving with her arms but found that it merely reduced her RFC to sedentary (Tr. 664-665).  He reviewed Dr. Musick's medical records and noted that Plaintiff had reported improvement with conservative treatment and that an antibiotic had cleared up her armpit (axillae) (Tr. 665).

Dr. Musick had opined that Plaintiff's limitations met Listing 8.06, but the ALJ found that his failure to assess functional limitations meant that the record did not support a very serious limitation (Tr. 667-668).  And the ALJ further acknowledged that Plaintiff had continued struggling with her hidradenitis in 2018 but found that it only supported the "chronic impairment supporting the claimant's residual functional capacity" and is too removed from the date last insured for consideration (Tr. 665-666).  For the same reason, the ALJ discounted Dr. Murugappan's opinion that occurred over 10 months after the date last insured (Tr. 667).

A reviewing court will reverse the ALJ's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence."  *Martin v. Saul,* 950 F.3d 369, 373 (7th Cir. 2020).  "Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin,* 950 F.3d at 373, quoting *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019).  Viewed in its entirety, the Court finds that the ALJ built an "accurate and logical bridge between the evidence" in the record of hidradenitis and his ultimate decision that the Plaintiff's hidradenitis resulted in a sedentary exertion level but did not meet Listing 8.06. *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014).  This Court will not re-weigh the

evidence to find that Plaintiff's condition met Listing 8.06. *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004) (reviewing district court may not "re-weigh the evidence or substitute its judgment for that of the ALJ").

Plaintiff further contends that the ALJ failed to expound on several medical records relevant to Listing 8.06, such as those from her primary doctor, John Cumberledge, M.D., which merit a remand for further discussion. But the ALJ's decision discussed the significant hidradenitis records regarding the Listing 8.06, and any other omissions were minor. See, *Deborah M. v. Saul,* 994 F.3d 785, 788 (7th Cir. 2021) ("ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability").

### ALJ's Analysis of Plaintiff's Subjective Symptoms

Plaintiff contends that the ALJ failed to properly evaluate her daily activities and subjective symptoms. Based on this failure, Plaintiff further contends, the "administrative decision is not supported by substantial evidence" (Doc. 18, p. 16).

An ALJ is not required to credit a claimant's own reports of disabling symptoms. *See Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020), citing 42 U.S.C. § 423(d)(5)(A). An ALJ is only required to give reasons sufficient to provide a fair sense of how he assessed a claimant's testimony and statements. *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To reverse the ALJ's findings regarding impairment-related symptoms, Plaintiff must show that the ALJ was "patently wrong" when evaluating them. *Cullinan v. Berryhill,* 878 F.3d 598, 603 (7th Cir. 2017) ("We will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support").

The ALJ discussed Plaintiff's lengthy testimony at her hearings in June 2019 and June 2022 (Tr. 663-664). Afterward, the ALJ reviewed the objective evidence and concluded that Plaintiff's statements are not entirely consistent with it (Tr. 664-668). For example, with respect to the findings of Ms. Kilzer, the ALJ notes that, "With the exception of the majority of her recommended environmental limitations, documented observations by the claimant's other providers, including intermittently abnormal monofilament testing, single or bilateral axillae hidradenitis suppurativa lesions, and the claimant's presentation in no acute distress with normal breath effort and a normal gait (Exhibits 2F/16, 22; 3F/32, 37; 13F/15-17), does not support the extreme restrictions Ms. Kilzer assessed" (Tr. 668).

Throughout the ALJ's decision, he compares medical records with Plaintiff's testimony about her conditions. Accordingly, this Court finds that the ALJ did evaluate Plaintiff's statements considering the objective testing and medical records and that this analysis was not "patently wrong." *Id.*

## Conclusion

After careful review of the record, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Defendant and to close this matter.

**IT IS SO ORDERED.**

**DATED: March 30, 2024**

**STACI M. YANDLE**
**United States District Judge**